**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| BRUCE H.,[1] | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 3:25-CV-454 (RCY) |
| FRANK BISIGNANO, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION
**(Adopting Report and Recommendation of the Magistrate Judge)**

Plaintiff Bruce H. challenges the Social Security Administration Commissioner's ("Commissioner" or "Defendant") final decision to deny his application for Title II disability insurance benefits. On July 15, 2026, Magistrate Judge Summer L. Speight issued a Report and Recommendation ("R&R") on the parties' cross-motions for summary judgment. ECF No. 25. The R&R recommended that the Court (1) deny the Plaintiff's motion for summary judgment; (2) grant the Commissioner's motion for summary judgment; and (3) affirm the final decision of the Commissioner. Plaintiff has objected to the Magistrate Judge's R&R and asks that the Court reject the R&R and remand the matter for further administrative proceedings. For the reasons that follow, the Court will overrule Plaintiff's objections and will adopt the Magistrate Judge's R&R in full.

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants in social security cases by first name and last initial.

## I. STANDARD OF REVIEW

A district court reviews *de novo* any part of a Magistrate Judge's disposition to which a party has properly objected. Fed. R. Civ. P. 72(b)(3); *Wimmer v. Cook*, 774 F.2d 68, 73 (4th Cir. 1985). As long as the "grounds for objection are clear, district court judges must consider them *de novo*, or else run afoul of both § 636(b)(1) and Article III." *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023). However, "district court judges are not required to consider new arguments posed in objections to the magistrate's recommendation." *Id.* at 460 n.3 (citing *Samples v. Ballard*, 860 F.3d 266, 275 (4th Cir. 2017)).

In conducting *de novo* review, a court must determine whether the factual findings are supported by substantial evidence and whether the proper legal standard was applied in evaluating the evidence. *Johnson v. Barnhart,* 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence requires "more than a mere scintilla of evidence but may be somewhat less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In reviewing for substantial evidence, a court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Id.* Because the standard is "somewhat less than a preponderance," it is possible for a decision to be supported by substantial evidence, while substantial evidence also exists to support an alternative finding. *See Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) ("An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988))). Thus, even if the reviewing court were to personally disagree with the ALJ's conclusion, it must nevertheless affirm the determination if it is supported by

substantial evidence. *Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).

Upon concluding its review, a court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## II. ANALYSIS

Plaintiff objects to the R&R's conclusion that the ALJ adequately explained why he found the opinions of Plaintiff's treating physicians, Drs. Anderson and Phillingane, unpersuasive, and that the ALJ built an accurate and logical bridge between the evidence considered and the conclusions reached. Pl.'s Obj. 1. More specifically, Plaintiff argues that the Magistrate Judge improperly bridged the gap between the evidence of the record and the ALJ's determination of the persuasiveness of the treating physician opinions, thus providing *post hoc* rationalization where there was none in the ALJ's own opinion. *Id.* at 2–4. Faced with this specific objection, which is predicated on the same arguments upon which Plaintiff relied in his summary judgment briefing, *see* Pl.'s Mem. Supp. Mot. Summ. J. 10–16, ECF No. 21, the Court is obligated to engage in *de novo* review of the record to determine whether the Magistrate Judge erred in concluding that ALJ's findings are supported by substantial evidence and that the ALJ provided an appropriate logical bridge between the evidence and his evaluation of the medical opinions. *Elijah*, 66 F.4th at 460, n.3. Having done so, the Court is not persuaded by Plaintiff's objection. The Court finds the R&R well-reasoned, supported by the record and applicable law, and consistent with this Court's *de novo* assessment, and as such will adopt the R&R in full.

**A. The ALJ's RFC Determination**

In the course of his five-step[2] disability evaluation, the ALJ determined that Plaintiff had the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) except he requires a handheld assistive device to ambulate over 25 feet. He can less than occasionally balance, and he requires a handheld assistive device to do so. He can occasionally stoop, kneel, crouch, and climb ramps and stairs, but he cannot crawl or climb ladders, ropes, or scaffolds. He cannot operate foot controls. He can frequently handle, finger, and feel. He cannot work around extreme cold, excessive vibrations, moving machinery, or unprotected heights, and he cannot drive in a work setting.

R. at 28. In support of this RFC, the ALJ walked through, *inter alia*, the medical opinions in the record and articulated their respective "persuasiveness," as required by 20 C.F.R. § 416.920c(b). R. at 31–34. In so doing, the ALJ each time addressed the two "most important factors:" supportability and consistency. 20 C.F.R. § 416.920c(b)(2); *see* R. at 31–34. Because the ALJ's RFC determination involved lesser limitations than those advised by Plaintiff's treating physicians, Drs. Anderson and Phillingame, Plaintiff challenges the adequacy of the ALJ's explanations for finding the doctors' opinions unpersuasive.

**B. Dr. Anderson's Opinion**

The Court is not persuaded by Plaintiff's argument that the ALJ did not properly explain his grounds for finding that Dr. Anderson's opinion was inconsistent with other record evidence and otherwise not supported by Dr. Anderson's own treating notes.

The ALJ began his discussion of Dr. Anderson's opinion by reciting the limitations that Dr. Anderson assigned Plaintiff on a questionnaire, to wit:

---

[2] The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 CFR § 404.1520(a). Between steps three and four, the ALJ determines the claimant's RFC, which accounts for the most the claimant can do despite his or her impairments. *Id.* § 404.1545(a). Steps four and five then consider whether the claimant can perform his or her past work, or, if not, whether the claimant can perform other work that is available in the national economy. *Id.* §§ 404.1520(a)(4)(iv), (v). The ALJ performed the challenged evaluation of Ms. Foust-Ward's opinion in connection with determining Plaintiff's RFC.

> [T]he claimant can walk 50 feet without pain. He can stand and walk for one hour in an eight-hour day, and can sit for six hours. He can rarely lift up to ten pounds. He can rarely climb ramps and stairs, balance, and stoop, but he can never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. He can use his hands for fine and gross manipulative activities for half the day, and he can reach for five percent of the day. He must elevate his legs above heart level for two hours per day. His symptoms occasionally interfere with his attention and concentration. He cannot perform routine, repetitive tasks at a consistent pace, tolerate strict deadlines, complete fast-paced tasks, or handle exposure to work hazards. He will require a 15-minute break every hour. He will be absent from work more than three times per month.

R. at 33. The ALJ found this limitation opinion "not consistent with the evidence, which indicates that the claimant has a greater capacity for standing, walking, lifting, climbing stairs, stooping, kneeling, crouching, reaching, and using his hands than Dr. Anderson finds[,] *for the reasons previously discussed*." *Id.* (emphasis added).

Relying on *Roberta M. v. Saul*, 2019 WL 4786057, at *7 (W.D. Va. Sept. 30, 2019), Plaintiff takes issue with the "see above" nature of this reference. *See* Pl.'s Obj. 2. But as the Magistrate Judge pointed out, *see* R. & R. at 17–18, *Roberta M.* was concerned with—and rejected—an ALJ's blanket statement that a medical opinion, writ large, was "for the most part inconsistent with the considerations raised above." *Roberta M.*, 2019 WL 4786057, at *6 (quoting *Roberta M.* R. at 24). The district court found that this generalized assignment of inconsistency failed to identify which aspects of the opinion were inconsistent, and the similarly generalized reference to "the considerations above" prevented the court from otherwise identifying the areas of inconsistency. *See id.* at *6–7 ("The ALJ did not specify which of Dr. Lemmer's were inconsistent with the record. . . . Nor did the ALJ specify which part of the record is inconsistent with Dr. Lemmer's assessment. . . . In sum, the lack of reference to specific findings by Dr. Lemmer and to specific parts of the record that are inconsistent with his findings[] frustrates meaningful review of the ALJ decision."). The ALJ's decision in this case does not suffer from the same defects.

Contrary to the case in *Roberta M.*, the ALJ here identified the specific aspects of Dr. Anderson's limitations opinion that he found were inconsistent with the record: Plaintiff's capacity for standing, walking, lifting, climbing stairs, stooping, kneeling, crouching, reaching, and using his hands. R. at 33. Shortly before engaging with Dr. Anderson's opinion, the ALJ had assessed the opinion of Dr. Spetzler, a state agency reviewing physician, who opined that Plaintiff

> can stand and walk for two hours in an eight-hour day, and can sit for about six hours. He can lift and carry ten pounds both occasionally and frequently. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but []he should never climb ladders, ropes, or scaffolds. He can engage in frequent gross manipulation.

*Id.* at 31. In so doing, the ALJ meticulously identified the record evidence that was consistent with Dr. Spetzler's determination of Plaintiff's standing, walking, lifting, climbing, stooping, kneeling, crouching, and "gross manipulation" (i.e., use of his hands) abilities, which the ALJ found largely, but not entirely persuasive. *Id.* at 31–32. The ALJ deviated from Dr. Spetzler's opinion in some regards, determining that while evidence supported Dr. Spetzerl's opinion that Plaintiff *could* perform certain activities, he should not be required to do so. *See, e.g.*, *id.* (determining that Plaintiff's reported activities "require him to attain a variety of postures, suggesting that he can occasionally stoop, kneel, crouch, and climb ramps and stairs," but that "given his pain and the wounds on his feet, he should not be required to crawl," and that "it could be dangerous for him to climb ladders, work around moving machinery and unprotected heights, and drive in a work setting, [so] he should not perform these activities at all").

Later in his recitation of the medical opinion evidence, the ALJ engaged with the opinion of Ms. Blowe, another agency examiner, and in so doing determined that Ms. Blowe's opinion that Plaintiff could "reach frequently" was inconsistent with the record evidence. *Id.* at 32. Specifically, Plaintiff "ha[d] not alleged any difficulty using his arms, and providers have not

described a reduced range of motion in his upper extremities, [thus] impl[ying] that he can reach without restriction." *Id.*

Based on the foregoing, it is clear that the ALJ built the necessary logical bridge between the record evidence and his RFC determinations regarding Plaintiff's capacity for standing, walking, lifting, climbing stairs, stooping, kneeling, crouching, and using his hands, via his discussion of Dr. Spetzler's opinion, and regarding Plaintiff's capacity to reach, via his discussion of Ms. Blowe's opinion.[3] The Court agrees with the Magistrate Judge, that the ALJ was not then required to repeat this analysis when it came time to address Dr. Anderson's opinion. *See* R. & R. at 19 (quoting *John R. v. Kijakazi*, 2023 WL 262358, at *4 (E.D. Va. Mar. 29, 2023)). Accordingly, the Court finds that the ALJ properly considered the consistency of Dr. Anderson's opinion.

With respect to supportability, the ALJ determined that Dr. Anderson's opinion was "also not supported by Dr. Anderson's own treatment notes, which document abnormalities in the claimant's gait and wounds over his amputation sites, but are otherwise generally unremarkable." R. at 33. Plaintiff argues that the ALJ was required to provide more of a narrative explanation to justify his discounting of the details in Dr. Anderson's notes. Pl.'s Obj. 3; Pl.'s Mem. Supp. Mot. Summ. J. 13–14. The Court disagrees. The ALJ justified his supportability conclusion with the fact that the treatment notes are "otherwise unremarkable" beyond the observed abnormalities in the claimant's gait and wounds over his amputation sites. Accordingly, where the ALJ had already credited Plaintiff with limitations related to his gait and amputation-site wounds, the fact that he

[3] The Court also observes that the ALJ rejected other aspects of Dr. Anderson's limitation opinion, also on inconsistency grounds, but because those limitations had not been addressed in the ALJ's earlier discussion of other medical opinions, in those instances the ALJ specifically cited to record evidence in bolstering his inconsistency determination. R. at 33. This contrast makes clear that the ALJ was applying the appropriate standards in assessing the entirety of Dr. Anderson's limitations, while avoiding re-hashing previously conducted analyses. *John R.*, 2023 WL 262358, at *4. And, appropriately, Plaintiff does not challenge those aspects of the ALJ's inconsistency analysis.

did not find the *extent* of Dr. Anderson's assigned limitations supported is not reversible error. The ALJ did not discredit Dr. Anderson's notes whole-cloth, as Plaintiff's briefing might suggest. Rather, the ALJ simply determined that Dr. Anderson's treatment notes could not serve as support for the extent of the limitation opined.

The Court finds that this determination was based on "the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion," and thus the decision was properly supported by substantial evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). The decision is not subject to reversal merely because other such evidence,[4] weighed differently, could have supported a different conclusion. *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015); *see* R. & R. at 20. The prerogative of this Court is not to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472. Because the Court finds that the ALJ (1) properly evaluated and explained the supportability and consistency factors in determining the persuasiveness of Dr. Anderson's opinion, and (2) built an accurate and logical bridge from the record evidence to his conclusions, the Court finds that the ALJ applied correct legal standards and substantial evidence supports his conclusions. *Johnson*, 434 F.3d 653.

**C. Dr. Phillingame's Opinion**

The Court is similarly not persuaded that the ALJ erred with respect to his evaluation of Dr. Phillingame's limitations opinion. Dr. Phillingame opined that

> the claimant cannot walk without pain. He cannot stand or walk in a work setting, and he can sit for less than one hour. He should elevate his right leg below waist

[4] And, the Court rejects Plaintiff's argument that the ALJ's analysis was deficient for failure to address certain aspects of Dr. Anderson's treatment notes. *See Moore v. Saul*, 822 F. App'x 183, 185 (4th Cir. 2020) ("'[A]n ALJ is not required to discuss every piece of evidence submitted.' . . . Moreover, '[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.'" (quoting *Black v. Apfel*, 143 F.3d 838, 386 (8th Cir. 1998))). Again, as long as there is more than a scintilla of evidence to support the ALJ's decision, it is not subject to reversal simply because other evidence, weighed differently, might support a different outcome. *Dunn*, 607 F. App'x at 274.

> level eight times per day for two hours each time. He cannot lift or carry any weight, and he cannot climb, balance, stoop, kneel, crouch, or crawl. He cannot perform routine, repetitive tasks at a consistent pace, perform detailed or complex tasks, work under strict deadlines, perform fast-paced tasks, or tolerate exposure to work hazards. His symptoms constantly interfere with his attention and concentration, and he will be absent from work about twice a month.

R. at 33. The ALJ then noted that this limitation opinion was "not consistent with the evidence, which demonstrates that [Plaintiff] has a greater capacity for sitting, standing, walking, sitting without elevating his leg, lifting, carrying, performing postural tasks,[5] completing mental work activities, sustaining attention and concentration, and attending work than Dr. Phillingame finds[,] *for the reasons explained previously*." *Id.* (emphasis added). Plaintiff again takes issue with the "see-above" nature of the ALJ's explanation. Pl.'s Obj. 3–4. But, for the same reasons the Court found no issue with the ALJ's incorporation of his prior analyses with respect to Dr. Anderson's opinion, the Court finds no issue here.

Notably, Dr. Phillingame's opinion called for *greater* limitations than did Dr. Anderson's opinion. *Compare* R. at 33 (Dr. Anderson's proposed limitations), *with* R. at 33–34 (Dr. Phillingame's opinion). Thus, the Court's analysis with respect to the ALJ's inconsistency-based rejection of Dr. Anderson's over-limiting opinion regarding Plaintiff's capacity for standing, walking, lifting, and performing postural tasks controls the disposition as to Dr. Phillingame's opinions regarding the same. *See supra* Part II.B (discussing the ALJ's disposition of similar limitation-inconsistencies in Dr. Anderson's opinion). This leaves Dr. Phillingame's opinions regarding (1) sitting; (2) sitting without elevating his leg; (3) carrying; (4) completing mental work activities; (5) sustaining attention and concentration; and (6) attending work. All of these are discussed in the ALJ's evaluations of the medical opinions preceding that of Dr. Phillingame,

---

[5] The Court understands this to be short-hand for the ALJ's earlier description of Dr. Phillingame's opined limitations with respect to Plaintiff's ability to climb, balance, stoop, kneel, crouch, or crawl. *See* R. at 33.

however, and so the Court once again finds that the ALJ's consistency analysis was sufficiently supported by substantial evidence, that the ALJ created a clear logical bridge between the record evidence and his conclusions, and that his failure to repeat that logic in connection with each reported medical opinion is not grounds for reversal.

Specifically, the ALJ addressed the consistency of sitting and carrying in connection with Dr. Spetzler's opinion. R. at 31. And he addressed the consistency of the record with respect to Plaintiff's ability to sit without elevating his leg, complete mental work activities, sustain attention and concentration at work, and attend work in his evaluation (and rejection) of Dr. Anderson's opinion. *Id.* at 33; *see supra* n.3. Accordingly, based on the same legal principles articulated in connection with the ALJ's evaluation of Dr. Anderson's opinion, the Court finds that the ALJ's consistency analysis was proper.

Plaintiff does not specifically object to the Magistrate Judge's analysis with respect to the supportability factor underpinning the ALJ's evaluation of Dr. Phillingame's opinion. Accordingly, the Court does not engage with this aspect other than to say that, having reviewed the record, the Court finds no error in the reasons provided by the ALJ for finding Dr. Phillingame's opinion unsupported by his own examination notes. *See* R. at 33–34 (observing that, while the notes "describe ulcers and diminished strength and sensation in the claimant's left foot, and abnormalities in his gait," they "do not identify limited strength in any area or any disturbances in the claimant's mental status" and therefore do not support the limitations opined by Dr. Phillingame); *Hancock*, 667 F.3d at 472; *Dunn*, 607 F. App'x at 274.

Accordingly, based on the above *de novo* review, the Court finds no error in the Magistrate Judge's conclusion that the ALJ applied correct legal standards and that substantial evidence supports the ALJ's evaluations of Plaintiff's treating physicians' opinions. Consequently, the

Court likewise finds that the ALJ's decision was supported by substantial evidence, and therefore it is appropriate to affirm the Commissioner's determination. *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). The R&R will accordingly be adopted in full.

**III. CONCLUSION**

Having reviewed the record, the Court will overrule Plaintiff's objection to the Magistrate Judge's R&R, adopt the R&R, grant the Commissioner's motion for summary judgment, deny the Plaintiff's motion for summary judgment, and affirm the final decision of the Commissioner.

An appropriate Order will accompany this Memorandum Opinion.

/s/ RCY
Roderick C. Young
United States District Judge

Date: September 30, 2026
Richmond, Virginia